IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KAREN STROMQUIST, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

PROGRESSIVE UNIVERSAL INSURANCE
COMPANY, an Ohio corporation,

Defendant.

8:22–CV–332

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Progressive Universal Insurance Company (Progressive) has moved to dismiss Counts I, III, and IV of the Class Action Complaint that plaintiff Karen Stromquist brought on behalf of herself and other similarly situated individuals. Filing 24 at 1. Progressive makes this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Counts identified fail to state claims for relief. Filing 24 at 1. Stromquist does not contest Progressive's position that Count I of the Complaint should be dismissed. Filing 28 at 7. However, she opposes the Motion as it relates to her claims in Counts III and IV. *See* Filing 28 at 7–8. Count II of the Complaint— which alleges a breach of contract claim—is not at issue on this Motion and remains pending. *See* Filing 25 at 2.

Count III of the Complaint alleges a breach of the covenant of good faith and fair dealing. Filing 1 at 18. Count IV of the Complaint seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.* Filing 1 at 19.The Court concludes that Stromquist has adequately pleaded a claim for breach of the covenant of good faith and fair dealing in Count III. However, her claim for declaratory relief in Count IV cannot go forward. Thus, the Court grants Progressive's Motion in part and denies it in part for the following reasons.

1

# I.  BACKGROUND

## A.  Factual Background[1]

Stromquist was involved in a car wreck and sustained physical damage to her vehicle on November 16, 2019. Filing 1 at 5 (¶16). At the time of the accident, she was insured by Progressive. Filing 1 at 5 (¶16). After Stromquist made a claim for property damage, Progressive determined that her vehicle was a "total loss" and paid her what it purported to be the Actual Cash Value (ACV) for her vehicle as Progressive had promised to do consistent with the insurance policy and Nebraska law. Filing 1 at 5 (¶¶17–18); *see also* Filing 1-1 at 20, 24.

Progressive uses a "total loss settlement process" in calculating valuations and claim payments in such circumstances. Filing 1 at 5–6 (¶19). As part of the process, Progressive obtains a "Vehicle Valuation Report" that is prepared by a different entity—Mitchell International, Inc. (Mitchell). Filing 1 at 6 (¶19). Progressive relies on the valuation provided by Mitchell in determining the ACV amount owed under the policy. Filing 1 at 6 (¶19). Mitchell's valuation reports "purport to contain values for comparable vehicles for sale in the claimant's geographic area" and "also contain a purported valuation of the loss vehicle based upon these prices for comparable vehicles listed in the report." Filing 1 at 6 (¶20). "The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration." Filing 1 at 6 (¶20). However, these valuation reports also "make a further adjustment to each loss vehicle called a 'Projected Sold Adjustment'" or PSA. Filing 1 at 6 (¶21). In Stromquist's case, for example, each of the seven comparable vehicles received PSAs ranging from -$857.00 to -$497.00. Filing 1 at 6 (¶21).

---

[1] Except where otherwise indicated, the following facts are taken from Stromquist's Complaint. *See Liscomb v. Boyce*, 954 F.3d 1151, 1153–54 (8th Cir. 2020) ("To avoid dismissal, the complaint must contain facts that, if 'accepted as true, . . . state a claim to relief that is plausible on its face.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The PSAs are purportedly used in valuation reports as "an adjustment to reflect consumer purchasing behavior" such as where a consumer negotiates a different price than the listed price of the vehicle. Filing 1 at 6 (¶22). However, Stromquist alleges that these PSAs "do not reflect market realities . . . and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of [i]nternet pricing and comparison shopping." Filing 1 at 6–7 (¶23). Stromquist acknowledges that in a prior era "dealerships generally priced vehicles above market knowing that some consumers might be poor negotiators and they would realize an inflated profit on those sales." Filing 1 at 7 (¶24). Yet, she alleges this no longer reflects the current dynamic of the used car market given the prevalence of internet shopping and the ability for consumers to compare vehicles across multiple dealerships. Filing 1 at 7 (¶25).

"Instead, car dealerships use sophisticated pricing software—which provides the advertised price of all competitors; the average 'turn' of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now appraise vehicles before acquiring them to price them to a market and do not negotiate from that price." Filing 1 at 7 (¶25). Based on this new reality, Stromquist alleges that "a negotiated discount off the cash price is highly atypical and is not proper to include in determining ACV." Filing 1 at 8 (¶27). Thus, she claims that the PSAs "are contrary to appraisal standards," Filing 1 at 8 (¶28), and Progressive "thumbs the scale by discarding vast amounts of relevant data that contradict any application of a [PSA] and . . . [fails] to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the 'sales price' but do not influence the ACV[.]" Filing 1 at 8 (¶29). Indeed, she claims that prior to July 2021, the PSA calculation excluded transactions in which the list price of a vehicle equaled the sold price. Filing 1 at 9 (¶30).

According to Stromquist, Progressive "has not exercised even a modicum of curiosity to investigate whether market realities support the application of a [PSA]." Filing 1 at 9 (¶34). She maintains that "[n]either Progressive's form Policy nor Nebraska law permit reducing a vehicle's value for invented or arbitrarily assumed justifications." Filing 1 at 9 (¶35). Stromquist further alleges that Progressive fails to account for a number of other factors "that may influence the recorded 'sales price' but not the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase)." Filing 1 at 10–11 (¶44). "In these instances, the ACV of the vehicle remains priced to market; the dealership simply transferred the anticipated profit through either the sale of an ancillary product or by reducing what it would have offered in trade-in value." Filing 1 at 11 (¶45).

Stromquist goes on to allege that "[t]he impropriety and arbitrariness of [the PSAs] are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions, Inc.—does not apply [PSAs] in this manner." Filing 1 at 11 (¶46). Based on her "information and belief," she also claims that Progressive does not apply PSAs "when determining ACV of total losses in California or Washington." Filing 1 at 11 (¶47). Stromquist therefore posits that "[t]here is no justification for applying these adjustments when valuing total losses in Nebraska while not subjecting California and Washington insureds to the same negative adjustments." Filing 1 at 11 (¶47).

In sum, Stromquist claims that she "and each member of the proposed class was damaged by [Progressive's] application of these [PSAs] because they were not paid the ACV they would have received had [Progressive] applied proper methodologies and appraisal standards." Filing 1 at 11 (¶48). In her case, "the payment of ACV by [Progressive] would have been $667.29 higher, before adding the related increase in payments for applicable sales taxes." Filing 1 at 11 (¶49).

4

**B.  Procedural Background**

Stromquist filed her Class Action Complaint in this Court on September 16, 2022. Filing 1 at 21. Less than two months later, Progressive filed the present motion to dismiss along with an accompanying brief. Filing 24; Filing 25. Stromquist submitted a timely response to this motion on December 13, 2022. Filing 28.

Before Progressive filed its reply brief, Stromquist filed two separate notices of supplemental authority. Filing 29; Filing 30. Stromquist's first notice of supplemental authority, which she submitted on December 20, 2022, directed the Court to an Order that had been issued the day prior in the Southern District of Indiana. Filing 29 (citing *Schroeder v. Progressive Paloverde Ins. Co.*, No. 122cv00946JMSMPB, 2022 WL 17752171 (S.D. Ind. Dec. 19, 2022)). Stromquist's second notice of supplemental authority, which she submitted on January 2, 2023, directed the Court to an Order that had been issued three days prior in the Eastern District of Kentucky. *See* Filing 30 (citing *Watson v. Progressive Direct Ins. Co.*, No. CV 5:22-203-DCR, 2022 WL 18027628 (E.D. Ky. Dec. 30, 2022)).

Progressive filed its reply brief thereafter on January 3, 2023. Filing 31. Since then, Stromquist has filed two additional notices of supplemental authority. Filing 32, Filing 33. Her third notice of supplemental authority, which she submitted on January 10, 2023, directed the Court to an Order that had been issued the day prior in the Northern District of Illinois. *See* Filing 32 (citing *Holmes v. Progressive Universal Ins. Co.*, No. 22 C 894, 2023 WL 130477 (N.D. Ill. Jan. 9, 2023)). Her fourth notice of supplemental authority, which she submitted on January 31, 2023, directed the Court to an Order that had been issued four days prior in the Eastern District of Tennessee. *See* Filing 33 (citing *Costello v. Mountain Laurel Assurance Co.*, No. 2:22-cv-35-TAV-CRW, slip op. at *1 (E.D. Tenn. Jan. 27, 2023)).

## II.  LEGAL ANALYSIS

### A.  Rule 12(b)(6) Standards[2]

Upon a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), "[c]onclusory allegations and 'threadbare recitals of the elements of a cause of action' cannot survive . . . ." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[a] claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). "Mere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). Moreover, "[w]hile the Court accepts as true all well-pleaded factual allegations and reasonable inferences drawn from those allegations, the Court need not stretch allegations beyond their sensible and reasonable implications." *Glick v. W. Power Sports Inc.*, 944 F.3d 714, 717 n.2 (8th Cir. 2019).

---

[2] Progressive has brought this motion pursuant to Rule 12(b)(6) for failure to state a claim. Filing 24 at 1. However, its basis for challenging Count IV of the Complaint is Stromquist's lack of standing to pursue declaratory relief. As the Court will explain in further detail below, lack of Article III standing implicates subject-matter jurisdiction, which is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure, not Rule 12(b)(6). The Court will address the applicable standards that govern Progressive's standing arguments during its resolution of that issue.

## B. Count I –The Nebraska Consumer Protection Act

Count I of Stromquist's Complaint alleges a claim under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59–1601, *et seq*. Filing 1 at 14. After Progressive moved to dismiss Count I for failure to state a claim, Stromquist responded as follows: "Upon review of Defendant's arguments and citation of authority, Plaintiff agrees to withdraw her claim brought under the Nebraska Consumer Protection Act (Count 1)." Filing 28 at 7. Consistent with Progressive's Motion and Stromquist's concession, Count I of the Complaint is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012) ("[T]here is a presumption that a dismissal under Rule 12(b)(6) is a judgment on the merits made with prejudice").

## C. Count III – The Covenant of Good Faith and Fair Dealing

### 1. *The Parties' Arguments*

Count III of the Complaint alleges a breach of the covenant of good faith and fair dealing. Filing 1 at 18. Progressive argues that Stromquist "has not alleged any facts to show that [it] acted arbitrability and capriciously in a way that ran afoul of her reasonable expectations." Filing 25 at 10. In support of this argument, Progressive points to Stromquist's Complaint and its attachments and claims they "show that [Progressive] determined the value of [Stromquist's] loss exactly the way it said it would under the Policy[.]" Filing 25 at 10. Progressive also emphasizes that Stromquist's "Complaint does not assert that her claim was wrongfully denied in bad faith. It simply asserts that [Stromquist] disagrees with [Progressive's] valuation of her totaled vehicles." Filing 25 at 10. Progressive also notes that "the Complaint is devoid of any allegation that [Stromquist] challenged her valuation in the two years between receiving the valuation report and filing the instant lawsuit, much less that [Progressive] rejected a demand from [her] for a larger settlement payment." Filing 25 at 11. Progressive thus maintains that nothing in Stromquist's

Complaint "demonstrates that [it] acted arbitrarily, capriciously, or unreasonably" as required to establish such a claim under Nebraska law. *See* Filing 25 at 11.

For her part, Stromquist emphasizes that under Nebraska law, "the question of a party's good faith in the performance of a contract is generally a question of fact." Filing 28 at 7 (citing *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 674 (Neb. 2011)). Accordingly, if her allegations are taken as true, Stromquist contends that they "support a claim for breach of the covenant of good faith and fair dealing." Filing 28 at 8. Citing various portions of her Complaint, Stromquist notes that she has "allege[d] that Progressive invented an adjustment that was used solely as a basis to arbitrarily reduce the value of total loss vehicles." Filing 28 at 8. She further notes that she has "allege[d] that Progressive applies this adjustment by manipulating and discarding data that specifically demonstrates that the adjustment is unwarranted and unsupportable." Filing 28 at 8. Therefore, in her view, "[t]hese allegations are specific, detailed, and sufficiently describe a scheme that is arbitrary, capricious, and led to a valuation of [her] vehicle that 'ran afoul of her reasonable expectations.'" Filing 28 at 8.

Progressive argues in reply that "the facts alleged in the Complaint do not support [the] conclusion" that Stromquist articulates in her brief. *See* Filing 31 at 3. Progressive stresses that it "relied on valuation software provided by a vendor—Mitchell International, Inc.—to generate vehicle valuations as it was permitted to do under the Policy." Filing 31 at 3. Progressive then posits that "[t]here are no allegations that [it] has anything to do with the methodology Mitchell uses to calculate the PSA, that [Progressive] analyzes or filters (or even has access to) the transaction data on which the PSA is based, or that [Progressive] prepared [Stromquist's] valuation report applying the PSAs." Filing 31 at 4. Progressive further notes that Stromquist "has pointed

to no authority finding that a defendant's reliance on a third party—as contemplated by the parties' contract—can form the basis of a bad faith claim." Filing 31 at 5 (footnote citation omitted).

### 2. Applicable Standards

Nebraska law recognizes that "[a]n insurance policy is a contract." *Lynch v. State Farm Mut. Auto. Ins. Co.*, 745 N.W.2d 291, 296 (Neb. 2008). "The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties do anything which will injure the right of another party to receive the benefit of the contract." *Dietzel Enterprises, Inc. v. J. A. Wever Constr., L.L.C.*, 979 N.W.2d 517, 527 (Neb. 2022). While "there must have been a contract at some point in time in order for there to be a bad faith claim," *Hayes v. Metro. Prop. & Cas. Ins. Co.*, 908 F.3d 370, 374 (8th Cir. 2018) (applying Nebraska law), "a cause of action for insurer bad faith is separate from, and not dependent on, a cause of action for breach of the insurance policy, although the two may share facts in common." *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 432 (Neb. 2022). Indeed, Nebraska recognizes "claims of bad faith are grounded in tort" and "it is the breach of the covenant of good faith and fair dealing from which the insurer's tort liability springs." *See id.* at 431–32.

"The nature and extent of an implied covenant of good faith and fair dealing are measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party." *Dietzel*, 979 N.W.2d at 527 (internal citation omitted). "A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract." *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003). This implied covenant is not "an everflowing cornucopia of wished-for legal duties" and "cannot give rise to new obligations not otherwise contained in a contract's express terms.'" *Dick v. Koski Pro. Grp, P.C.*, 950 N.W.2d 321, 360 (Neb. 2020), *opinion modified on denial of reh'g*, 953

N.W.2d 257 (2021) (internal quotation marks omitted). Whether a party acted in good faith in the performance of a contract "is a question of fact" under Nebraska law. *Dietzel*, 979 N.W.2d at 527.

### 3. Discussion

This is not the first time a federal court has been asked to decide whether such a claim against Progressive can survive a Rule 12(b)(6) motion to dismiss. Class action suits alleging nearly identical claims for breach of the covenant of good faith and fair dealing have been filed in several districts.[3] This would appear to be the first time that this particular claim against Progressive has been raised under Nebraska law, however. While other district court decisions addressing like claims are instructive, this Court must independently determine the matter by applying Nebraska law. *See Hayes v. Metro. Prop. & Cas. Ins. Co.*, 908 F.3d 370, 374 (8th Cir. 2018) ("As the forum state, Nebraska law applies in this case"). Having done so, and accepting Stromquist's allegations as true for purposes of ruling on the motion, *see Liscomb*, 954 F.3d at 1153–54, the Court concludes that Stromquist has plausibly pleaded a claim for breach of the covenant of good faith and fair dealing.

Under Nebraska law, breach of the covenant of good faith and fair dealing "embraces any number of bad faith settlement tactics, such as inadequate investigation, delays in settlement, false

---

[3] *See e.g.*, *Schroeder*, 2022 WL 17752171, at *6 (concluding that the plaintiff adequately stated a claim for breach of the covenant of good faith and fair dealing under Indiana law because she "alleged intentional conduct on the part of Progressive" that was "taken with a dishonest purpose"); *Watson*, 2022 WL 18027628 at *10 (permitting one of the plaintiff's breach of the covenant of good faith and fair dealing claims arising under Kentucky law to go forward because she "plausibly alleged that Progressive abused its discretion in calculating the ACV by failing to investigate the PSA"); *Holmes*, 2023 WL 130477, at *9 (determining that the plaintiffs' breach of the covenant of good faith and fair dealing claim under Illinois law survived Progressive's motion to dismiss for failure to state a claim); *Costello*, No. 2:22-cv-35-TAV-CRW, slip op. at *27 (denying a Progressive subsidiary's motion to dismiss because the plaintiff's allegations raised questions as to whether there had been a breach of duty under the insurance policy to act in good faith consistent with Tennessee law); *Grady v. Progressive Direct Ins. Co.*, No. 22-CV-866 (NEB/TNL), 2022 WL 18494898, at *7 (D. Minn. Nov. 30, 2022) (reasoning that because the plaintiff had alleged that Progressive "exercised its discretion to calculate ACVs under the Policy unreasonably and with an improper motive" she had sufficiently pleaded a claim for breach of the covenant of good faith and fair dealing under Minnesota law); *Williams v. Progressive Direct Ins. Co.*, No. CV 22-510-MAK, 2022 WL 4482726, at *10 (D. Del. Sept. 27, 2022) (denying Progressive's motion to dismiss the plaintiff's claim for breach of the covenant of good faith and fair dealing under Delaware law).

accusations, and so forth." *Ruwe v. Farmers Mut. United Ins. Co.*, 469 N.W.2d 129, 135 (Neb. 1991); *accord Millard Gutter*, 980 N.W.2d at 432. For example, in *Ruwe*, the "principal allegation of bad faith [was] that [the insurance company] denied [the plaintiff's] claim without a proper and thorough investigation of the fire scene and falsely accused [the plaintiff] of arson without a reasonable basis." *Id.* The lower court initially dismissed the plaintiff's claim in *Ruwe* for failing to state a cause of action, but the Nebraska Supreme Court reversed. *Id.* at 136. In so doing, the Nebraska Supreme Court explained that "[t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the insurance policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim[.]" *Id.* at 134 (internal quotation marks and alteration omitted).[4] The *Ruwe* court further explained that the "knowledge or reckless disregard element" can be shown "by an insurer's failure to conduct a proper investigation and subject the results to a reasonable evaluation and review." *Id.* at 135.

Stromquist has adequately pleaded such a claim because she alleges that Progressive lacked a reasonable basis for denying her the benefits she was entitled to under her policy—*i.e.*, the full and accurate ACV for her totaled vehicle—and she has alleged that Progressive at least recklessly disregarded the lack of a reasonable basis for doing so. *Millard Gutter*, 980 N.W.2d at 432. As to this latter component, Stromquist specifically alleges that "[n]either Progressive nor Mitchell have ever conducted any study or research to determine whether such 'consumer purchasing behavior' exists and impacts ACV in the modern used-car market." Filing 1 at 3 (¶6). She similarly alleges that in calculating PSAs prior to July 2021, Progressive excluded "all transactions in which the list price of a vehicle equaled the sold price" and did so "[w]ithout having performed any investigation

---

[4] The Nebraska Supreme Court has continued to apply this same standard in more recent years. *See Millard Gutter*, 980 N.W.2d at 432 ("To establish a claim of first-party bad faith, a policyholder must show both an absence of a reasonable basis for denying benefits of the insurance policy and the insurer's knowledge of reckless disregard of the lack of a reasonable basis for denying the claim") (citing *Ruwe*, 469 N.W.2d at 135).

or study[.]" Filing 1 at 9 (¶¶30, 33). According to the Complaint, Progressive "simply assumes all such transactions are anomalies." Filing 1 at 9 (¶33). Stromquist therefore asserts that Progressive breached the covenant of good faith and fair dealing by, *inter alia*, "[f]ailing to conduct ***any*** investigation or study or research into whether the [PSA] (i) reflects the used automobile market, (ii) is based on accurate data or extrapolations, (iii) is consistent with accepted appraisal methods and practices, or (iv) has any justification whatsoever." Filing 1 at 18 (¶88(b)) (emphasis in original). Because "[f]ailure to properly investigate and review [a] claim can be evidence of bad faith[,]" Stromquist has adequately pleaded this element. *See Factory Mut. Ins. Co. v. Nebraska Beef., Inc.*, No. 8:09CV159, 2010 WL 11527100, at *4 (D. Neb. May 3, 2010) (citing *Ruwe*, 469 N.W.2d at 135).

Moreover, claims for breach of the implied covenant of good faith and fair dealing are measured by the justifiable expectations of the parties, and when one party acts "arbitrarily" such "conduct exceeds the justifiable expectations of the second party." *Dietzel*, 979 N.W.2d at 527. The very first paragraph of the Complaint asserts that the PSAs are "arbitrary." Filing 1 at 1 (¶1). Stromquist goes on to allege that Progressive acted "with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically to arbitrarily reduce the amount of their total-loss payments to insureds[.]" Filing 1 at 18 (¶87). These allegations are more than threadbare recitals. *Ashcroft*, 556 U.S. at 678. The Complaint supports the alleged arbitrariness of the PSAs by asserting that they run "contrary to appraisal standards" and claims that the PSAs are not applied in other states like California and Washington. Filing 1 at 8 (¶28); Filing 1 at 11 (¶47).

Stromquist has plausibly pleaded that she justifiably expected to be paid a true and accurate ACV for her totaled vehicle. Her insurance policy—which she attached to her Complaint—

provided that in the event of a total loss Progressive would pay the ACV of the covered vehicle (less certain enumerated deductions to the extent they applied). *See* Filing 1-1 at 20. The policy also provided that the ACV would be "determined by the market value, age, and condition of the vehicle at the time the loss occurs." Filing 1-1 at 24. However, Stromquist's Complaint effectively alleges that Progressive "violate[d], nullifie[d] or significantly impair[ed] [this] benefit of [her] contract" by applying a PSA that arbitrarily reduced the real ACV she should have been entitled to under the policy. *See Spanish Oaks*, 655 N.W.2d at 400. Accepting her allegations as true for purposes of ruling on the motion, *see Liscomb*, 954 F.3d at 1153–54, she has sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing.

The Court is not persuaded by Progressive's arguments to the contrary. Progressive notes in its Opening Brief that "the Complaint is devoid of any allegation that [Stromquist] challenged her valuation in the two years between receiving the valuation report and filing the instant lawsuit, much less that [Progressive] rejected a demand from [Stromquist] for a larger settlement." Filing 25 at 11. However, the Nebraska Supreme Court has concluded "that ultimate payment of benefits does not preclude a bad faith claim." *LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 49 (Neb. 2005). If a bad faith claim can persist in Nebraska "even if an insurance company ultimately grants a claim relating to the insured's benefits," *id.*, then it logically follows that Stromquist can pursue a bad faith claim based on her allegation that Progressive paid her some—but not all—of the ACV she should have been entitled to under the policy. *See* Filing 1 at 11 (¶49) (claiming that the PSA artificially lowered the ACV by $667.29 before accounting for sales tax).

Nor is the Court persuaded by Progressive's suggestion in its reply brief that a bad faith claim cannot lie where the defendant relies on a third party in circumstances like this. *See* Filing 31 at 5. While Progressive's reliance on Mitchell's valuation reports might be relevant to the

13

ultimate merits of the claim, the only question before this Court at this stage is whether Stromquist has adequately pleaded a claim—not whether she will prevail on the claim. *See Dietzel*, 979 N.W.2d at 527 (whether a party acted in good faith in the performance of a contract "is a question of fact"); *cf. Watson*, 2022 WL 18027628 at *10 ("And while Progressive correctly states that it is authorized to contract with a third-party software system like Mitchell, Progressive nonetheless retains the obligation to ensure that the methods used by Mitchell are justifiable. Watson has plausibly alleged that Progressive abused its discretion in calculating the ACV by failing to investigate the PSA").

Finally, and although the Court well-recognizes that other federal courts considering like claims against Progressive were not tasked with applying Nebraska law, it is nevertheless worth noting that of the six analogous cases involving near-identical claims against Progressive that the Court has been made aware of all concluded that the respective plaintiffs adequately pleaded at least one claim for breach of the covenant of good faith and fair dealing. *See supra* at n.3. Progressive makes no argument in its brief that Nebraska law is somehow so different from Indiana, Tennessee, Illinois, Kentucky, Delaware, and Minnesota law on this subject that this Court should reach a different conclusion. For the foregoing reasons, the Court concludes that Stromquist has adequately pleaded a claim for breach of the covenant of good faith and fair dealing under Nebraska law, and the Court denies Progressive's motion to dismiss Count III of the Complaint pursuant to Rule 12(b)(6).

### D. Count IV – Relief Under the Declaratory Judgment Act

*1. The Parties' Arguments*

Stromquist also seeks a declaratory judgment. Filing 1 at 19. "Specifically, [Stromquist] is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Progressive for Progressive to base the valuation and payment of claims

on values of comparable vehicles that have been reduced by factually erroneous [PSAs]." Filing 1 at 19 (¶93). Stromquist likewise "seeks a declaration that Progressive's application of unfounded [PSAs] results in a valuation of less than the ACV Progressive is required [to use] under its insurance contracts to pay insureds." Filing 20 at 1 (¶96).

Progressive contends that Stromquist "lacks standing to bring her claim for prospective relief because she cannot allege any likelihood of future injury." Filing 25 at 11. Progressive asserts that the Complaint "alleges only a past injury" and "is devoid of any factual allegations establishing a risk of future injury." Filing 25 at 11. In its view, the fact that Stromquist "might someday be in another automobile accident that results in a total loss and have a settlement issued under the same insurance policy based on a valuation report that includes a PSA is entirely 'speculative.'" Filing 25 at 11 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Stromquist counters that she "has alleged sufficient facts which, when accepted as true, state a claim for declaratory relief." Filing 28 at 9. She argues that "this action seeks to determine the rights and obligations of the parties under the insurance contracts between [her] and [Progressive], and [her] injuries would be redressed by the declaratory relief sought." Filing 28 at 10. Stromquist insists that her "dispute with [Progressive] is ongoing; it is not an isolated past wrong or based on a hypothetical series of future events." Filing 28 at 10. Stromquist further argues that her claim for declaratory relief is ripe and that if this Court were to conclude otherwise, both she and the Class would suffer substantial harm "due to [Progressive's] continuing use of a valuation practice that arbitrarily undervalues total loss claims." Filing 28 at 10.

In reply, Progressive states that Stromquist "conflates the doctrines of ripeness and standing." Filing 31 at 6. Progressive then cites Eighth Circuit precedent for the proposition that "[t]o demonstrate standing for prospective relief, the plaintiff[] must show that [she] face[s] 'a real

15

and immediate threat that [she] would again suffer similar injury in the future,' not a conjectural or hypothetical one." Filing 31 at 6 (quoting *Webb as next of friend of K.S. v. Smith*, 936 F.3d 808, 814–15 (8th Cir. 2019) (in turn quoting *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019)). Progressive posits that to the extent Stromquist suffered an injury, such injury would have "occurred at the time [Progressive] adjusted and paid [Stromquist's] claims—well over three years ago." Filing 31 at 6. Progressive therefore maintains that "disputes over amounts due and owing under a contract cannot form the basis of a claim for declaratory judgment." Filing 31 at 7.

### 2.  Applicable Standards

Progressive's ground for dismissal of Stromquist's declaratory judgment claim is that she lacks standing to assert such a claim.  However, lack of standing means that the Court "has no subject-matter jurisdiction over the claim." *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601 (8th Cir. 2022) ("Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim"). Rule 12(b)(1) of the Federal Rules of Civil Procedure technically governs a challenge to subject matter jurisdiction, not Rule 12(b)(6).[5] This difference—while important for purposes of concluding whether dismissal of a claim will be with or without prejudice—does not impact how the Court procedurally considers the merits of the motion because in a Rule 12(b)(1) facial attack on subject-matter jurisdiction, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks omitted).  If the Court ultimately agrees with Progressive that Stromquist's claim for

---

[5] Although Progressive raised its motion pursuant to Rule 12(b)(6), the Court is not bound by this framing of the matter particularly given its *sua sponte* "obligation to consider whether it has subject matter jurisdiction in every case." *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011).

declaratory relief in Count IV of the Complaint cannot proceed because she lacks standing, it will be for a lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), rather than for failure to state a claim, pursuant to Rule 12(b)(6).[6]

"The existence of a plaintiff's Article III standing is a jurisdictional prerequisite, and [courts] will not reach the merits if the plaintiff does not have standing." *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 708 (8th Cir. 2021). "A plaintiff seeking federal jurisdiction must establish the three Article III standing requirements: (1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 709 (internal quotation marks omitted). "Plaintiffs seeking a declaratory judgment under 28 U.S.C. § 2201 must meet these same Article III requirements." *Id.* In this context, the question of standing "is whether the facts alleged, under all the circumstances show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks omitted). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks and citation omitted).

---

[6] The Eighth Circuit Court of Appeals has observed that "[m]otions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: [1] at the pleading stage, like a Rule 12(b)(6) motion; [2] on undisputed facts, like a summary judgment motion; and [3] on disputed facts." *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). This Court understands "like a Rule 12(b)(6) motion" to mean as a facial attack under 12(b)(1) subject to Rule 12(b)(6) protections. *See Carlsen*, 833 F.3d at 908.

17

### 3. Discussion

Unlike Stromquist's breach of the covenant of good faith and fair dealing claim in Count III, whether she has standing to seek declaratory relief in Count IV is not governed by Nebraska law. *See Dakota, Minnesota & E.R.R. Corp. v. Schieffer*, 711 F.3d 878, 881 (8th Cir. 2013) ("The Declaratory Judgment Act is procedural; it does not expand federal court jurisdiction") (internal quotation marks omitted); *see also NORCAL Mut. Ins. Co. v. Dishman*, No. 5:19-06028-CV-RK, 2019 WL 2505048, at *1 (W.D. Mo. June 17, 2019) ("Relief under the Declaratory Judgment Act is procedural in nature; therefore, federal law governs whether relief may be granted under this Act and whether a motion to dismiss, or in the alternative, motion to stay shall be granted") (citing *Hinkel Excavation & Constr., Inc. v. Constr. Equip. Int'l*, 2000 U.S. Dist. LEXIS 22176, at *9, 2000 WL 33915812 (N.D. Iowa Nov. 20, 2000)). Thus, while not binding on this Court, other federal district court decisions addressing standing to assert similar claims against Progressive are persuasive.

Of the four district court orders Stromquist has cited as supplemental authority, not one of them supports her contention that she has standing to pursue a claim for declaratory relief. *See Schroeder*, 2022 WL 17752171, at *9 (granting Progressive's motion to dismiss on the plaintiff's declaratory judgment claim because the plaintiff lacked standing and the claim was duplicative of her breach of contract claim); *Watson*, 2022 WL 18027628, at *12 (granting Progressive's motion to dismiss the plaintiff's declaratory judgment claim because the plaintiff "lack[ed] standing to seek prospective relief"); *Holmes*, 2023 WL 130477, at *9 (granting Progressive's motion to dismiss the plaintiffs' declaratory judgment claim because the plaintiffs "lack[ed] standing to seek declaratory relief and their claim [was] duplicative of their breach of contract claim"); *Costello*, No. 2:22-cv-35-TAV-CRW, slip op. at *29 (granting a Progressive subsidiary's motion to dismiss the declaratory judgment claim because the plaintiff had "not pled factual content giving rise to

18

the reasonable belief that she is presently suffering or will suffer harm"). This Court substantially agrees with the reasoning of these other recent district court orders addressing the same general set of circumstances.[7] Therefore, it too will grant Progressive's motion to dismiss Count IV of the Complaint.

At bottom, Stromquist's declaratory judgment action "seeks 'prospective relief against future conduct of [a defendant] who [allegedly] caused injury in the past[.]'" *Frost*, 920 F.3d at 1161 (quoting *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 1995)). To obtain this relief, she needs to "show that she faces 'a real and immediate threat that she would again suffer similar injury in the future.'" *Frost*, 920 F.3d at 1161. In *Frost*, the plaintiff sought declaratory and injunctive relief from a city ordinance banning certain dog breeds. *Id.* at 1160. However, she neither owned a dog nor resided within that city. *Id.* at 1161. The plaintiff nevertheless insisted that she intended to adopt a dog in the near future and that when she did so she would likely take it to the city. *Id.* The Eighth Circuit concluded that her threat of future injury was "'conjectural or hypothetical' and therefore insufficient to confer standing." *Id.* Moreover, although the city had previously seized the plaintiff's dogs, these past seizures could not "be redressed by a declaratory judgment because no 'present right' related to those dogs [was] at stake." *Id.* at 1162.

Stromquist describes the nature of her dispute with Progressive as "ongoing" and contends that Progressive still continues to breach its policy, Filing 28 at 10, but she "does not plead future

---

[7] The Court further observes that Stromquist relies on the District of Delaware's decision in *Williams* in support of her breach of the covenant of good faith and fair dealing claim. *See* Filing 28 at 3 (citing *Williams*, 2022 WL 4482726, at *10). However, *Williams* directly undermines her claim for declaratory relief. *See Williams*, 2022 WL 4482726, at *11 ("Ms. Williams lacks standing to seek declaratory relief. Ms. Williams challenges Progressive's past conduct; the application of the projected sold adjustment to the determination of the actual cash value"). Likewise, and although not cited by the parties, the District of Minnesota also recently concluded in *Grady* that the plaintiff had "fail[ed] to plead that she suffer[ed] an ongoing injury from [Progressive], so she lacks standing to bring a declaratory judgment action." *Grady*, 2022, WL 18494898 at *7.

injury: she does not allege that she is personally likely to total another car such that [Progressive] would again miscalculate an ACV using the erroneous PSAs." *Grady*, 2022, WL 18494898 at *7. Furthermore, and as Progressive notes in its Opening Brief, Stromquist has not even alleged that she still maintains an automobile insurance policy with Progressive. *See* Filing 25 at 2; *see generally* Filing 1. So even if she did total another vehicle in the future, there is no basis for this Court to conclude that she would submit her claim through Progressive and be paid an impermissibly discounted ACV again. There is no plausible allegation in the Complaint permitting the Court to conclude that Stromquist faces "a real and immediate threat that she [will] again suffer similar injury in the future." *Frost*, 920 F.3d at 1161 (internal quotation marks omitted).

Having considered the arguments on this motion through the lens of a Rule 12(b)(1) facial attack—which requires the Court to accept Stromquist's factual allegations as true, *see Carlse*n, 833 F.3d at 908—the Court concludes that Stromquist's lack of standing deprives it of subject-matter jurisdiction over her declaratory judgment claim. *See Agred Found v. United States Army Corps of Engineers*, 3 F.4th 1069, 1075 (8th Cir. 2021) (concluding that because the plaintiff could not satisfy all of standing requirements on its claim seeking a declaratory judgment, "the district court properly dismissed [the] claim for lack of subject matter jurisdiction"). Therefore, the Court will dismiss Count IV of the Complaint without prejudice.[8]

---

[8] The Eighth Circuit has repeatedly said "[a] district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent." *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019) (quoting *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004)); *see also Hart*, 630 F.3d at 1091 (modifying jurisdictional dismissal to be without prejudice). Other United States Courts of Appeals have said much the same. *See e.g.*, *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case'"); *Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice").

### III.   CONCLUSION

For the foregoing reasons, the Court grants Progressive's motion to dismiss, Filing 24, in part and denies it in part. Accordingly,

IT IS ORDERED:

1.  Progressive's motion to dismiss Count I of Stromquist's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted;

2.  Progressive's motion to dismiss Count III of Stromquist's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied; and

3.  Count IV of Stromquist's Complaint is dismissed without prejudice because Stromquist lacks standing and therefore the Court lacks subject-matter jurisdiction over the claim.

Dated this 16th day of March, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge